**David L. LADD, Register of Copyrights, Plaintiff-Counterdefendant-Appellee,**

v.

**LAW & TECHNOLOGY PRESS, Defendant-Counterclaimant-Appellant.**

No. 84–5847.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 6, 1985.

Decided June 7, 1985.

John Fargo, Washington, D.C., for Ladd.

Michael D. Scott, Manhattan Beach, Cal., for Law & Technology Press.

Before BOOCHEVER and BEEZER, Circuit Judges, and CARROLL,* District Judge.

BOOCHEVER, Circuit Judge:

Law & Technology Press (Press) refused to deposit two copies of its publication with the Library of Congress as is required by

---

* Honorable Earl H. Carroll, United States District Judge for the District of Arizona, sitting by designation.

the copyright law. Press claims that the deposit requirement is an unconstitutional taking under the fifth amendment and an unconstitutional burden on the press under the first amendment. Press also contends that the trial court abused its discretion by granting summary judgment for the government without permitting Press discovery. We conclude that there were no genuine issues of material fact, nor were there additional facts to be elicited which could have altered the outcome of the case. The grant of summary judgment without discovery was therefore proper. The deposit requirement is not an unconstitutional taking because it validly conditions the enjoyment of copyright, although failure to make the deposit does not subject the copyright to forfeiture. Moreover, the deposit requirement as a condition for the voluntarily sought benefit of copyright does not burden the expression or dissemination of ideas, and does not implicate first amendment rights. We therefore affirm.

Press is a California corporation which owns the copyright in the periodical *The Scott Report.* Press published nine issues of *The Scott Report,* each with copyright notice, in 1982. Under 17 U.S.C. § 407 (1982), Press was required to deposit two copies of each issue with the Copyright Office for the Library of Congress,[1] but did

---

1. The relevant copyright deposit provisions are as follows:

§ 407. **Deposit of copies or phonorecords for Library of Congress**

(a) Except as provided by subsection (c), and subject to the provisions of subsection (e), the owner of copyright or of the exclusive right of publication in a work published with notice of copyright in the United States shall deposit, within three months after the date of such publication—

(1) two complete copies of the best edition; or

(2) if the work is a sound recording, two complete phonorecords of the best edition, together with any printed or other visually perceptible material published with such phonorecords.

Neither the deposit requirements of this subsection nor the acquisition provisions of subsection (e) are conditions of copyright protection.

(b) The required copies or phonorecords shall be deposited in the Copyright Office for the use or disposition of the Library of Congress. The Register of Copyrights shall, when requested by the depositor and upon payment of the fee prescribed by section 708, issue a receipt for the deposit.

(c) The Register of Copyrights may by regulation exempt any categories of material from the deposit requirements of this section, or require deposit of only one copy or phonorecord with respect to any categories. Such regulations shall provide either for complete exemption from the deposit requirements of this section, or for alternative forms of deposit aimed at providing a satisfactory archival record of a work without imposing practical or financial hardships on the depositor, where the individual author is the owner of copyright in a pictorial, graphic, or sculptural work and (i) less than five copies of the work have been published, or (ii) the work has been published in a limited edition consisting of numbered copies, the monetary value of which would make the mandatory deposit of two copies of the best edition of the work burdensome, unfair, or unreasonable.

(d) At any time after publication of a work as provided by subsection (a), the Register of Copyrights may make written demand for the required deposit on any of the persons obligated to make the deposit under subsection (a). Unless deposit is made within three months after the demand is received, the person or persons on whom the demand was made are liable—

(1) to a fine of not more than $250 for each work; and

(2) to pay into a specially designated fund in the Library of Congress the total retail price of the copies or phonorecords demanded, or, if no retail price has been fixed, the reasonable cost of the Library of Congress of acquiring them; and

(3) to pay a fine of $2,500, in addition to any fine or liability imposed under clauses (1) and (2), if such person willfully or repeatedly fails or refuses to comply with such a demand.

§ 408. **Copyright registration in general**

(a) **Registration Permissive.**—At any time during the subsistence of copyright in any published or unpublished work, the owner of copyright or of any exclusive right in the work may obtain registration of the copyright claim by delivering to the Copyright Office the deposit specified by this section, together with the application and fee specified by sections 409 and 708. Subject to the provisions of section 405(a), such registration is not a condition of copyright protection.

(b) **Deposit for Copyright Registration.** —Except as provided by subsection (c), the material deposited for registration shall include—

(1) in the case of an unpublished work, one complete copy or phonorecord;

not do so. Pursuant to section 407, appellee Ladd, the Register of Copyrights, sent a demand notice to Press seeking deposit of the copyrighted issues of *The Scott Report.* Press refused to comply on the ground that section 407 was unconstitutional, and suggested that if the Library wanted *The Scott Report,* it become a paid subscriber. Ladd subsequently initiated this suit to recover the statutory penalties for failure to deposit: a $250 fine for each issue not deposited, and the retail price of the two copies of each issue. Press answered, admitting its failure to deposit, asserting the statute's unconstitutionality as a defense, contending that the government impermissibly had selected it for prosecution because of its vocal opposition to the law, and counterclaiming for a declaratory judgment of unconstitutionality and an injunction forbidding the enforcement of the law against Press.

Ladd filed a motion for summary judgment three and one-half weeks after Press answered the complaint. In its opposition to the motion, Press asked the court for a continuance during which Press could conduct discovery on factual issues raised in the motion. Without permitting discovery, the district court granted summary judgment for Ladd on all claims and counterclaims. On appeal, Press has not raised the selective prosecution issue.

## I. LACK OF DISCOVERY

■ We review the district court's decisions on discovery before summary judgment for abuse of discretion. *See Portland Retail Druggists Association v. Kaiser Foundation Health Plan,* 662 F.2d 641, 646 (9th Cir.1981); *Program Engineering, Inc. v. Triangle Publications,* *Inc.,* 634 F.2d 1188, 1193 (9th Cir.1980). The party opposing summary judgment must have an opportunity to respond to the motion, which includes time for discovery of facts essential to its opposition. *Portland Retail,* 662 F.2d at 645. However, appellant had the burden of showing the trial court what facts it hoped to discover which would raise issues of material fact. *Taylor v. Sentry Life Insurance Co.,* 729 F.2d 652, 656 (9th Cir.1984) (per curiam).

Press failed to meet this burden. In its opposition to summary judgment, Press did not identify any specific facts that it hoped to discover, merely stating that it wished to take discovery on "the issues raised in these papers." Of the nineteen items listed in Press' Statement of Genuine Issues of Material Fact, nine are issues of law rather than fact. Seven relate to just compensation for the deposit of the copyrighted works. Compensation was not a material issue due to the district court's decision that there was no taking as a matter of law. The remaining three items relate to Press' claim of selective prosecution. Because Press has abandoned this issue on appeal, lack of discovery on the issue is irrelevant at this point.

## II. SUMMARY JUDGMENT

Summary judgment is proper if there is no genuine issue of material fact and the moving party should prevail as a matter of law. Fed.R.Civ.P. 56(c); *Gould v. Mutual Life Insurance Co.,* 735 F.2d 1165, 1166 (9th Cir.1984). Review of a summary judgment is de novo. *Taylor,* 729 F.2d at 654. As Press is unable to point to any genuine issue of triable fact, we proceed to review of the district court's conclusions of law.

(2) in the case of the published work, two complete copies or phonorecords of the best edition;

(3) in the case of a work first published outside the United States, one complete copy or phonorecord as so published;

(4) in the case of a contribution to a collective work, one complete copy or phonorecord of the best edition of the collective work. Copies or phonorecords deposited for the Library of Congress under section 407 may be used to satisfy the deposit provisions of this section, if they are accompanied by the prescribed application and fee, and by any additional identifying material that the Register may, by regulation, require. The Register shall also prescribe regulations establishing requirements under which copies or phonorecords acquired for the Library of Congress under subsection (e) of section 407, otherwise than by deposit, may be used to satisfy the deposit provisions of this section.

### A. Is the Deposit Requirement Necessary and Proper?

All versions of the Copyright Act have been enacted pursuant to the power granted Congress by article I, section 8, clause 8 of the Constitution: "The Congress shall have Power ... To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." In carrying out the Copyright Clause, Congress can make "all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers." U.S. Const. art. I, § 8, cl. 18.

Press argues that the library deposit requirement is not necessary and proper to carry out the Copyright Clause and is invalid. Press contends that the Copyright Clause gives Congress the power to advance the arts and sciences *only* by granting copyrights and patents. However, Press cites no authority for this proposition.[2] While no case has directly addressed whether the library deposit is necessary and proper to the Copyright Clause, there is abundant authority that the primary purpose of the clause is to promote the arts and sciences for the public good, not to grant an economic benefit to authors and inventors. *E.g., Sony Corp. of America v. Universal City Studios, Inc.,* 464 U.S. 417, 104 S.Ct. 774, 782, 78 L.Ed.2d 574 (1984); *Zacchini v. Scripps-Howard Broadcasting Co.,* 433 U.S. 562, 576–77, 97 S.Ct. 2849, 2857–58, 53 L.Ed.2d 965 (1977); *Schnapper v. Foley,* 667 F.2d 102, 111 (D.C.Cir.1981) (quoting 1 M. Nimmer, *Nimmer on Copyright* § 1.03[B] (1981), to the effect that the first phrase of the Copyright Clause expands rather than limits congressional authority in the area), *cert. denied,* 455 U.S. 948, 102 S.Ct. 1448, 71 L.Ed.2d 661 (1982); *Berlin v. E.C. Publications, Inc.,* 329 F.2d 541, 543–44 (2d Cir.), *cert. denied,* 379 U.S.

822, 85 S.Ct. 46, 13 L.Ed.2d 33 (1964). Moreover, long-established principles of constitutional construction make clear that the lack of express constitutional authority for the deposit requirement does not preclude its validity and that the necessary and proper clause should be liberally construed. *See The Legal Tender Cases,* 79 U.S. (12 Wall.) 457, 533–39, 20 L.Ed. 287 (1872) (in construing range of "necessary and proper" clause, look to purposes of enumerated powers, not solely to express words of powers); *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 404–21, 4 L.Ed. 579 (1819) (mandating an expansive construction of the "necessary and proper" clause as essential to the functioning of a national government). Thus, a provision of the Copyright Act which sustains a national library for the public use is necessary and proper. We further note that the Supreme Court, albeit in passing, has recognized without questioning its constitutionality that the deposit requirement's purpose is to enforce contributions of desirable books to the Library of Congress. *See Washingtonian Publishing Co. v. Pearson,* 306 U.S. 30, 41, 59 S.Ct. 397, 402, 83 L.Ed. 470 (1939) (delay in copyright deposit and registration does not invalidate copyright); *see also National Conference of Bar Examiners v. Multistate Legal Studies, Inc.,* 692 F.2d 478, 485–86 (7th Cir. 1982) (copyright regulation allowing deposit of excised portion of testing materials valid), *cert. denied,* —— U.S. ——, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983).

### B. Fifth Amendment Issues

The first copyright act, Act of May 31, 1790, ch. 15, § 3, 1 Stat. 124, 125, contained a deposit clause which the Supreme Court held a constitutional condition of copyright. *Wheaton v. Peters,* 33 U.S. (8 Pet.) 591, 663–66, 8 L.Ed. 1055 (1834) (Con-

---

**2.** Press does quote *In re Cooper,* 254 F.2d 611, 616 (C.C.P.A.), *cert. denied,* 358 U.S. 840, 79 S.Ct. 63, 3 L.Ed.2d 75 (1958), as authority for this limiting construction of the Copyright Clause: "Article I, Section 8, eighth clause, of the Constitution, ... does no more than grant power to Congress to secure certain rights to authors and

inventors insofar as it elects to do so." Read in context, however, the *Cooper* language quoted does not state a limit on Congress' power, but states that the Copyright Clause conveys no rights to authors or inventors unless Congress elects to execute the clause. *Id.* at 616–17.

gress created copyright and may condition those rights upon deposit). However, that deposit was with the copyright office for administrative purposes relating to the grant of copyright. In 1846, Congress changed the deposit requirement, directing that one copy of each copyrighted work be deposited in the Smithsonian Institution and the Library of Congress.[3] Act of Aug. 10, 1846, ch. 178, § 10, 9 Stat. 102, 106. As the Supreme Court stated in *Washingtonian,* the purpose of this deposit requirement, of which section 407 is the current version, is not proof or preservation of copyright but the acquisition of books for the Library. *Washingtonian,* 306 U.S. at 41, 59 S.Ct. at 402. Until 1976, failure to deposit with the Library of Congress resulted in a forfeiture of copyright. Congress changed the deposit enforcement provisions because

> [a] realistic fine, coupled with the increased inducements for voluntary registration and deposit under other sections of the bill, seems likely to produce a more effective deposit system than the present one. The bill's approach will also avoid the danger that, under a divisible copyright, one copyright owner's rights could be destroyed by another owner's failure to deposit.[4]

H.R.Rep. No. 1476, 94th Cong., 2d Sess. 150, *reprinted in* 1976 U.S.Code Cong. & Ad.News 5659, 5766. Under the 1976 revision of copyright law, therefore, deposit is still required, but failure to deposit results not in forfeiture but in fines in the amount of the cost to the library of obtaining the work plus penalties.

Press argues that the requirement that a copyright owner give two copies of his work to the Library of Congress is a taking of private property for public use without just compensation and violates the fifth amendment. There is no question but that the materials are private property and that deposit with the Library is for a public use. Ladd argues, however, that the deposit rule is not a taking. Rather, it is a condition which Congress may legitimately attach to the grant of a benefit. By voluntarily choosing to avail itself of the benefit, Press has accepted the condition of deposit.

Congress indubitably can place conditions on the grant of a statutory benefit. *Ruckelshaus v. Monsanto Co.,* —— U.S. ——, 104 S.Ct. 2862, 2874–76, 81 L.Ed.2d 815 (1984) (not a taking when Congress requires Monsanto to disclose valuable research data in exchange for benefit of pesticide registration); *Graham v. John Deere Co.,* 383 U.S. 1, 6, 86 S.Ct. 684, 688, 15 L.Ed.2d 545 (1966) (within scope of constitutional grant, Congress may set conditions for patentability); *Wheaton,* 33 U.S. (8 Pet.) at 663–66 (Congress may require deposit and registration as conditions to copyright). However, Press advances three arguments that the deposit requirement is not a valid condition.

First, Press argues that cases validating conditions have addressed conditions related to the benefit sought, *see Graham,* 383 U.S. at 6, 17–19, 86 S.Ct. at 688, 693–94 (invention must be "nonobvious" to be patentable); *Wheaton,* 33 U.S. (8 Pet.) at 665 (deposit may serve to identify copyrighted material in case of later contest), and that in this case the condition is not related to the benefit sought, because the current deposit is not for copyright identification purposes, as in *Wheaton,* but for the use of the Library of Congress. *See Washingtonian,* 306 U.S. at 38–39, 41, 59 S.Ct. at 401, 402; *National Conference of Bar Examiners,* 692 F.2d at 486–87; 3 M. Nimmer, *Nimmer on Copyright* § 7.17[A], at 7–128 (1984).

---

3. The Library of Congress was first established in 1802, Act of Jan. 26, 1802, ch. 2, 2 Stat. 128, but at that time did not obtain any materials through the copyright provisions.

4. The phrase "divisible copyright" refers to the principle that any of the exclusive rights which make up a copyright, e.g., rights of reproduc-

tion, adaptation, publication, performance, and display, can be transferred and owned separately. *See* H.R.Rep. No. 1476, 94th Cong., 2d Sess. 123, *reprinted in* 1976 U.S.Code Cong. & Ad. News 5659, 5738–39; *see generally* 3 M. Nimmer, *Nimmer on Copyright* §§ 10.01[B], 10.02 [A]–[C] (1984).

In *Monsanto,* the Supreme Court established a less stringent test for a valid condition. That case involved a statutory provision that ten years after an applicant submits research data in support of a pesticide registration application, the EPA may use the data to evaluate other applicants' pesticides, and disclose the data, without the original applicant's permission and without compensation. Monsanto claimed that this was a taking without just compensation of its property interest in the data. The Court held that

> as long as Monsanto is aware of the conditions under which the data are submitted, and the conditions are rationally related to a legitimate government interest, a voluntary submission of data by an applicant in exchange for the economic advantages of a registration can hardly be called a taking.

*Monsanto,* 104 S.Ct. at 2876. All that the Court explicitly required was that the party be aware of the condition and that the condition be rationally related to a government interest. Under *Monsanto*'s facts, however, the condition furthered not *any* government interest, but a *related* government interest. Monsanto's marketing of pesticides was inherently related to the valid government interest in a safe environment, for which purpose Congress regulates pesticides. Requiring Monsanto to let others use its test results when registering their pesticides furthered this interest by facilitating the testing process. *Id.* at 2879–80.

The Copyright Clause grants copyright protection for the purpose of promoting the public interest in the arts and sciences. Conditioning copyrights on a contribution to the Library of Congress furthers this overall purpose.

Press' second contention is that under the 1976 revision, the deposit requirement by its own terms is no longer a condition of copyright, and therefore precedent on statutory conditions is inapplicable here. The revised statute states: "Neither the deposit requirements of this subsection nor the acquisition provisions of subsection (e) are conditions of copyright protection." 17 U.S.C. § 407(a) (1982). However, a complete reading of section 407 reveals that deposit is indeed still required of one obtaining a copyright, although protection of the copyright laws is not lost by failure to comply. The 1976 amendment merely changes the method by which the deposit requirement is enforced.

The previous law obligated the owner of a copyright, after publication, to deposit two copies with the Library. If the owner chose not to do so, the copyright was forfeit. The new law has taken away that choice about deposit. Once publication with copyright notice has occurred, the owner *must* deposit. If he does not, rather than allow forfeiture, the Register of Copyrights may force him to "deposit" by suing him for the price of the work and then purchasing it. Thus precedent on statutory conditions is applicable.

Press' third argument is that a line of Supreme Court patent cases prohibits requiring deposit of copyright materials as an unconstitutional taking without just compensation. *See United States v. Dubilier Condenser Corp.,* 289 U.S. 178, 189, 53 S.Ct. 554, 558, 77 L.Ed. 695 (1933) (United States had right to use patented invention created by federal employee at work, but not right to assignment of patent itself); *Belknap v. Schild,* 161 U.S. 10, 15–16, 16 S.Ct. 443, 444, 40 L.Ed. 599 (1896) (United States had no sovereign right to use patented device, but as sovereign could not be sued without consent); *James v. Campbell,* 104 U.S. (14 Otto) 356, 357–58, 26 L.Ed. 786 (1881) (United States cannot appropriate patented devices, but device in this case nonpatentable). In *James,* for example, the holder of a patent in a stamping machine sued a United States postmaster, alleging that he was unlawfully using the machine without paying the patent fee. The Court, noting the contrary English rule, unequivocally stated that the United States Constitution did not grant our government the prerogative to reserve to itself the free use of patented devices. *James,* 104 U.S. (14 Otto) at 357–58. The

Court mentions authors as well as inventors in a way which indicates that this principle applies equally to copyrights and patents. *Id.* at 358.

The cases cited, however, are distinguishable from the case at bar in two important ways. First, in none of these cases did the government act pursuant to any statutory scheme making government use a condition of patentability. Second, the government was not acting as a sovereign to further the public welfare by promoting arts and sciences; instead it appropriated the patented device for a proprietary purpose. *See Dubilier,* 289 U.S. at 183–85, 53 S.Ct. at 555–56 (government sought use of radio apparatus); *Belknap,* 161 U.S. at 24–25, 16 S.Ct. at 448 (government used caisson gate in navy drydock yard); *James,* 104 U.S. (14 Otto) at 357 (United States postmaster used stamping machine to postmark letters). In contrast, the deposit requirement here directly furthers the·purpose of promoting arts and sciences by adding to the collection of our national library. The *James* line of cases is therefore not controlling here.

### C. First Amendment Issues

 Press argues that the deposit requirement violates the first amendment because it burdens material protected by the first amendment. Press attempts to characterize deposit as an invidious tax on first amendment protected works. *See Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue,* 460 U.S. 575, 581–85, 103 S.Ct. 1365, 1369–72, 75 L.Ed.2d 295 (1983) (invalidating special use tax on paper and ink affecting only large newspapers). Press ignores the fact that the deposit requirement does not burden the first amendment concerns of expression and dis-

semination of ideas. *Cf. Citizen Publishing Co. v. United States,* 394 U.S. 131, 139–40, 89 S.Ct. 927, 931–32, 22 L.Ed.2d 148 (1969) (first amendment not a defense, nor an issue, in antitrust action brought against newspapers: "Neither news gathering nor news dissemination is being regulated by the present decree."). Deposit is not triggered by the publication of ideas. It comes into play only if the publisher voluntarily seeks the statutory benefit of copyright. The first amendment does not protect the right to copyright, and therefore a condition placed on copyright protection does not implicate first amendment rights.[5]

### D. Conclusion

We conclude that the deposit requirement is constitutional and affirm the award of summary judgment.

AFFIRMED.

---

**5.** This assumes, of course, that the condition itself does not trigger first amendment concerns, e.g., a condition that to be copyrightable a work may not criticize the government. Such a condition might be invalid because, while the first amendment does not protect the right to copyright, the act of copyrighting is not a waiver of first amendment rights. *See* 1 M. Nimmer, *Nimmer on Copyright* § 1.10[A] (1984); *cf. FCC v. League of Women Voters,* —— U.S. ——,

104 S.Ct. 3106, 3118–27, 82 L.Ed.2d 278 (1984) (acceptance of federal funding does not give government right to prohibit editorials by public broadcaster); *Consolidated Edison Co. v. Public Service Commission,* 447 U.S. 530, 534 n: 1, 100 S.Ct. 2326, 2331 n. 1, 65 L.Ed.2d 319 (1980) (utility's status as government regulated monopoly does not preclude its assertion of first amendment rights).