Eric ELDRED, et al., Appellants,

v.

Janet RENO, In her official capacity
as Attorney General, Appellee.

No. 99–5430.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 5, 2000.

Decided Feb. 16, 2001.

Lawrence Lessig argued the cause for appellants. With him on the briefs were Charles R. Nesson, Jonathan L. Zittrain, Geoffrey S. Stewart, Gregory A. Castanias, and Portia A. Robert.

Erik S. Jaffe was on the brief of amicus curiae Eagle Forum Education & Legal Defense Fund.

Laura N. Gasaway, Lyman Ray Patterson, and Edward Walterscheid, appearing pro se, were on the brief of amici curiae Laura N. Gasaway, et al.

Alfred Mollin, Counsel, U.S. Department of Justice, argued the cause for appellee. With him on the brief were David W. Ogden, Acting Assistant Attorney General, William Kanter, Counsel, and Wilma A. Lewis, U.S. Attorney.

Peter L. Felcher, Carey R. Ramos, Carl W. Hampe, Lynn B. Bayard, Gaela K. Gehring–Flores, Allan Adler, Fritz E. Attaway, Joseph J. DiMona, I. Fred Koenigsberg, and James J. Schweitzer were on the brief of amici curiae The Sherwood Anderson Literary Estate Trust, et al.

Before: GINSBURG, SENTELLE, and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

Separate opinion dissenting in part filed by Circuit Judge SENTELLE.

GINSBURG, Circuit Judge:

The plaintiffs in this case, corporations, associations, and individuals who rely for their vocations or avocations upon works in the public domain, challenge the constitutionality of the Copyright Term Extension Act of 1998 (CTEA), Pub.L. No. 105–298, 112 Stat. 2827. This marks the first occasion for an appellate court to address whether the First Amendment or the Copyright Clause of the Constitution of the United States constrains the Congress from extending for a period of years the duration of copyrights, both those already extant and those yet to come. We hold that neither does.

## I. Background

The CTEA amends various provisions of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* The portions of the CTEA at issue here extend the terms of all copyrights for 20 years as follows: (1) For a work created in 1978 or later, to which an individual author holds the copyright, the Act extends the term to the life of the author plus 70 years. *See* Pub L. No. 105–298 § 102(b)(1), 112 Stat. 2827; 17 U.S.C. § 302(a). (2) For a work created in 1978 or later that is anonymous, or pseudonymous, or is made for hire, the term is extended from 75 to 95 years from the year of publication or from 100 to 120 years from the year of creation, whichever occurs first. *See* Pub.L. No. 105–298 § 102(b)(3), 112 Stat. 2827; 17 U.S.C. § 302(c). (3) For a work created before 1978, for which the initial term of copyright was 28 years, the renewal term is extended from 47 to 67 years, thereby creating a combined term of 95 years. *See* Pub.L. No. 105–298 § 102(d), 112 Stat. 2827; 17 U.S.C. § 304. In all three situations, therefore, the CTEA applies retrospectively in the sense that it extends the terms of subsisting copyrights. As a result, the CTEA better aligns the terms of United States copyrights with those of copyrights governed by the European Union. *See* S.Rep. No. 104–315, at 7–8

(1996); Council Directive 93/98, art. 7, 1993 O.J. (L 290) 9.

The CTEA is but the latest in a series of congressional extensions of the copyright term, each of which has been made applicable both prospectively and retrospectively. In 1790 the First Congress provided, both for works "already printed" and for those that would be "[t]hereafter made and composed," initial and renewal terms of 14 years, for a combined term of 28 years. Act of May 31, 1790 § 1, 1 Stat. 124, 124. In 1831 the Congress extended the initial term to 28 years, thereby creating a combined term of 42 years. *See* Act of Feb. 3, 1831 § 1, 4 Stat. 436, 436. So the term remained until 1909, when the Congress extended the renewal term as well to 28 years, making for a combined term of 56 years. *See* Act of March 4, 1909 § 23, 35 Stat. 1075, 1080.

Between 1962 and 1974 the Congress passed a series of laws that incrementally extended subsisting copyrights. *See* Pub.L. No. 87–668, 76 Stat. 555 (1962); Pub.L. No. 89–142, 79 Stat. 581 (1965); Pub.L. No. 90–141, 81 Stat. 464 (1967); Pub.L. No. 90–416, 82 Stat. 397 (1968); Pub.L. No. 91–147, 83 Stat. 360 (1969); Pub.L. No. 91–555, 84 Stat. 1441 (1970); Pub.L. No. 92–170, 85 Stat. 490 (1971); Pub.L. No. 92–566, 86 Stat. 1181 (1972); Pub.L. No. 93–573, title I, § 104, 88 Stat. 1873 (1974). In 1976 the Congress altered the way the term of a copyright is computed so as to conform with the Berne Convention and with international practice. *See* H.R.Rep. No. 94–1476, at 135 (1976), U.S. Code Cong. & Admin. News at 5659, 5751. Thenceforth the term would be the life of the author plus 50 years or, where there was no identifiable author, the earlier of 75 years from the year of publication or 100 years from the year of creation. *See* Pub.L. No. 94–553 §§ 302–05, 90 Stat. 2541, 2572–76 (1976). The CTEA amends this scheme by adding 20 years to the term of every copyright.

The plaintiffs filed this suit against the Attorney General of the United States to obtain a declaration that the CTEA is un-constitutional. Among the plaintiffs are a non-profit association that distributes over the internet free electronic versions of books in the public domain; a company that reprints rare, out-of-print books that have entered the public domain; a vendor of sheet music and a choir director, who respectively sell and purchase music that is relatively inexpensive because it is in the public domain; and a company that preserves and restores old films and insofar as such works are not in the public domain, needs permission from their copyright holders—who are often hard to find—in order to exploit them.

The district court entered judgment on the pleadings in favor of the Government and dismissed the plaintiffs' case in its entirety. On appeal, the plaintiffs renew their claims that the CTEA both violates the First Amendment to the Constitution and is in various ways inconsistent with the Copyright Clause of Article I, § 8 of the Constitution, which authorizes the Congress: "To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries."

## II. Analysis

The plaintiffs claim that the CTEA is beyond the power of the Congress and therefore unconstitutional for three reasons: first, the CTEA, in both its prospective and retrospective applications, fails the intermediate scrutiny appropriate under the First Amendment; second, in its application to preexisting works, the CTEA violates the originality requirement of the Copyright Clause; and third, in extending the term of subsisting copyrights, the CTEA violates the "limited Times" requirement of the Copyright Clause—a requirement that they say is informed by the goal of "promot[ing] the Progress of Science and useful Arts." Because each of these grounds presents a pure question of law, we consider them *de novo*. *See, e.g.,*

*United States v. Popa*, 187 F.3d 672, 674 (D.C.Cir.1999).

## A. First Amendment

The First Amendment aspect of the plaintiffs' complaint attacks the CTEA not only in its application to subsisting copyrights but also insofar as it extends the terms of copyrights for works yet to be created. The Government questions plaintiffs' standing to complain in the latter regard.

### 1. Standing

■ Consider first the plaintiffs' standing with respect to works that, though now subject to subsisting copyrights, will in due course enter the public domain: The plaintiffs benefit from using works in the public domain and, but for the CTEA, they would be able to exploit additional works the copyrights to which would have expired in the near future. As such, they suffer an injury in fact that is traceable to the CTEA and that we could redress by holding the Act invalid. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The Government concedes as much.

In view of the plaintiffs' standing to challenge the CTEA with respect to works already copyrighted, the Government's objection to the plaintiffs' standing with respect to works yet to be created seems very weak indeed. The plaintiffs benefit from works in the public domain and are deprived of that benefit so long as such works are under copyright. That is as true for works not yet created as for extant works on which the copyrights are about to expire; the Government does not draw any meaningful distinction between the two categories of works. We conclude therefore that the plaintiffs have standing to pursue their prospective claim under the First Amendment.

### 2. The merits

■ The decisions of the Supreme Court in *Harper & Row Publishers Inc. v. Nation Enters.*, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985), and of this court in *United Video, Inc. v. FCC*, 890 F.2d 1173 (1989), stand as insuperable bars to plaintiffs' first amendment theory. In *Harper & Row* the Court held that a magazine's advance publication of excerpts from the memoirs of former President Gerald Ford infringed the copyright thereon. 471 U.S. at 569, 105 S.Ct. 2218. In doing so the Court explained how the regime of copyright itself respects and adequately safeguards the freedom of speech protected by the First Amendment.

[C]opyright's idea/expression dichotomy "strike[s] a definitional balance between the First Amendment and the Copyright Act by permitting free communication of facts while still protecting an author's expression." No author may copyright his ideas or the facts he narrates. 17 U.S.C. § 102(b). *See e.g., New York Times Co. v. United States*, 403 U.S. 713, 726, n. *, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971) (BRENNAN, J., concurring) (Copyright laws are not restrictions on freedom of speech as copyright protects only form of expression and not the ideas expressed).

*Id.* at 556, 105 S.Ct. 2218 (citation omitted). The first amendment objection of the magazine was misplaced "[i]n view of the First Amendment protections already embodied in the Copyright Act's distinction between copyrightable expression and uncopyrightable facts and ideas, and the latitude for scholarship and comment traditionally afforded by fair use." *Id.* at 560, 105 S.Ct. 2218.

In keeping with this approach, we held in *United Video* that copyrights are categorically immune from challenges under the First Amendment. There, certain cable companies petitioned for review of an FCC regulation providing that the supplier of a syndicated television program could agree to the program being broadcast exclusively by a single station in a local broadcast area. 890 F.2d at 1176–78. We rejected the first amendment aspect of their challenge as follows:

In the present case, the petitioners desire to make commercial use of the copyrighted works of others. There is no first amendment right to do so. Although there is some tension between the Constitution's copyright clause and the first amendment, the familiar idea/expression dichotomy of copyright law, under which ideas are free but their particular expression can be copyrighted, has always been held to give adequate protection to free expression.

890 F.2d at 1191.

The plaintiffs argue that "these authorities are restricted solely to the narrow case where a litigant demands a right to use otherwise legitimately copyrighted material," which case is "plainly distinct from [this] First Amendment challenge[ ] to the constitutionality of the statute granting a [copy]right in the first instance." We think the plaintiffs' purported distinction is wholly illusory. The relevant question under the First Amendment—regardless whether it arises as a defense in a suit for copyright infringement or in an anticipatory challenge to a statute or regulation—is whether the party has a first amendment interest in a copyrighted work. The works to which the CTEA applies, and in which plaintiffs claim a first amendment interest, are by definition under copyright; that puts the works on the latter half of the "idea/expression dichotomy" and makes them subject to fair use. This obviates further inquiry under the First Amendment.

The plaintiffs cite no case to the contrary. In two of the cases they do cite, *Reno v. ACLU,* 521 U.S. 844, 871–79, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997), and *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.,* 502 U.S. 105, 115–23, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991), the Supreme Court held statutes unconstitutional under the First Amendment because they were unjustifiably content based; the plaintiffs here do not claim that the CTEA is anything but content neutral. In *San Francisco Arts & Athletics, Inc. v. United States Olympic Committee,* also cited by the plaintiffs, the Court did indeed apply heightened scrutiny under the First Amendment to a statute granting the United States Olympic Committee trademark-like protection for the word "Olympic." 483 U.S. 522, 535–41, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987). Restricting the use of particular words "runs a substantial risk of suppressing ideas in the process," the Court explained. *Id.* at 532, 107 S.Ct. 2971. As we have seen, however, copyright protection cannot embrace ideas; it therefore does not raise the same concern under the First Amendment. Finally, although the plaintiffs assert that the Second Circuit has reached the merits of a first amendment challenge to an aspect of the Copyright Act of 1976, in fact that court, after reviewing the case law, concluded that the plaintiffs categorically lacked "any right to distribute and receive material that bears protection of the Copyright Act." *Authors League of America v. Oman,* 790 F.2d 220, 223 (1986).

As this is all the support plaintiffs muster for their proposition, we need not linger further in disposing of it. Suffice it to say we reject their first amendment objection to the CTEA because the plaintiffs lack any cognizable first amendment right to exploit the copyrighted works of others.

**B. Requirement of Originality**

■ The plaintiffs' second challenge ostensibly rests upon *Feist Publications, Inc. v. Rural Telephone Service Co.,* in which the Supreme Court held that telephone listings compiled in a white pages directory are uncopyrightable facts: "The *sine qua non* of copyright is originality." 499 U.S. 340, 345, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). "Originality is a constitutional requirement" for copyright because the terms "Authors" and "Writings," as they appear in the Copyright Clause, "presuppose a degree of originality." *Id.* at 346, 111 S.Ct. 1282.

■ The plaintiffs reason from this that the CTEA cannot extend an extant copyright because the copyrighted work al-

ready exists and therefore lacks originality. Not so. Originality is what made the work copyrightable in the first place. A work with a subsisting copyright has already satisfied the requirement of originality and need not do so anew for its copyright to persist. If the Congress could not extend a subsisting copyright for want of originality, it is hard to see how it could provide for a copyright to be renewed at the expiration of its initial term—a practice dating back to 1790 and not questioned even by the plaintiffs today.

The plaintiffs' underlying point seems to be that there is something special about extending a copyright beyond the combined initial and renewal terms for which it was initially slated. Nothing in *Feist* or in the requirement of originality supports this, however: All they tell us is that facts, like ideas, are outside the ambit of copyright. Undaunted in trying to advance their novel notion of originality, the plaintiffs point to cases that do not address the requirement of originality for copyright *per se*. They point to no case or commentary, however, that calls into question the distinction between a new grant of copyright—as to which originality is an issue—and the extension of an existing grant. That distinction reflects, at bottom, the difference between the constitutionally delimited subject matter of copyright and the Congress's exercise of its copyright authority with respect to that subject matter.

The plaintiffs do point out that the Supreme Court has said the "Congress may not authorize the issuance of patents whose effects are to remove existent knowledge from the public domain, or to restrict free access to materials already available." *Graham v. John Deere Co.,* 383 U.S. 1, 6, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). The Court similarly stated, over a century ago, that the issuance of a trademark could not be justified under the Copyright Clause because the subject matter of trademark is "the adoption of something already in existence." *Trade–Mark Cases,* 100 U.S. 82, 94, 25 L.Ed. 550 (1879). Applied *mutatis mutandis* to the subject of copyright, these teachings would indeed

preclude the Congress from authorizing under that Clause a copyright to a work already in the public domain.

The plaintiffs read the Court's guidance more broadly, in the light of *Feist,* to mean that a work in the public domain lacks the originality required to qualify for a copyright. That is certainly not inconsistent with the Court's opinion: A work in the public domain is, by definition, without a copyright; where the grant of a copyright is at issue, so too is the work's eligibility for copyright, and thus the requirement of originality comes into play. We need not adopt a particular view on that point, however, as it has nothing to do with this case. Here we ask not whether any work is copyrightable—indeed, the relevant works are already copyrighted—but only whether a copyright may by statute be continued in force beyond the renewal term specified by law when the copyright was first granted. For the plaintiffs to prevail, therefore, they will need something other than the requirement of originality upon which to make their stand.

### C. The Limitation of "limited Times"

■ We come now to the plaintiffs' contention that the CTEA violates the constitutional requirement that copyrights endure only for "limited Times." This claim at last speaks to the duration rather than to the subject matter of a copyright: If the Congress were to make copyright protection permanent, then it surely would exceed the power conferred upon it by the Copyright Clause.

The present plaintiffs want a limit well short of the rule against perpetuities, of course. And they claim to have found it— or at least a bar to extending the life of a subsisting copyright—in the preamble of the Copyright Clause: "The Congress shall have power ... To promote the Progress of Science and useful Arts...." Their idea is that the phrase "limited Times" should be interpreted not literally but rather as reaching only as far as is

justified by the preambular statement of purpose: If 50 years are enough to "promote ... Progress," then a grant of 70 years is unconstitutional. Here the plaintiffs run squarely up against our holding in *Schnapper v. Foley*, 667 F.2d 102, 112 (1981), in which we rejected the argument "that the introductory language of the Copyright Clause constitutes a limit on congressional power." The plaintiffs, however, disclaim any purpose to question the holding of *Schnapper*; indeed, they expressly acknowledge "that the preamble of the Copyright Clause is not a substantive limit on Congress' legislative power." Their argument is simply that "the Supreme Court has interpreted the terms 'Authors' and 'Writings' in light of that preamble, and that this Court should do the same with 'limited Times.'"

The problems with this argument are manifest. First, one cannot concede that the preamble "is not a substantive limit" and yet maintain that it limits the permissible duration of a copyright more strictly than does the textual requirement that it be for a "limited Time." Second, although the plaintiffs claim that *Feist* supports using the preamble to interpret the rest of the Clause, the Court in *Feist* never suggests that the preamble informs its interpretation of the substantive grant of power to the Congress (which there turned upon the meaning of "Authors" and of "Writings," each standing alone). 499 U.S. at 345–47, 111 S.Ct. 1282. Similarly, the *Trade–Mark Cases* cited in *Feist* rest upon the originality implied by "invention [and] discovery" and by the "writings of authors," and make no reference at all to the preamble. 100 U.S. at 93–94, 25 L.Ed. 550.

### III. The Dissent

■ The foregoing suffices to dispose of plaintiffs' arguments—as Judge Sentelle, dissenting, implicitly recognizes—and hence to resolve this case. Our dissenting colleague nonetheless adopts the narrow view of *Schnapper* urged by an amicus, although that argument is rejected by the actual parties to this case and therefore is

not properly before us. *See, e.g.,* 16A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3975.1 & n.3 (3d ed.1999); *Resident Council of Allen Parkway Vill. v. HUD*, 980 F.2d 1043, 1049 (5th Cir.1993) (amicus constrained "by the rule that [it] generally cannot expand the scope of an appeal to implicate issues that have not been presented by the parties to the appeal"); *cf. Lamprecht v. FCC*, 958 F.2d 382, 389 (D.C.Cir.1992) (intervenor as nonparty "cannot expand the proceedings" or "enlarge those issues presented"). This is particularly inappropriate because a court should avoid, not seek out, a constitutional issue the resolution of which is not essential to the disposition of the case before it. Moreover, because the plaintiffs conspicuously failed to adopt the argument of the amicus, the Government was not alerted to any need to argue this point and did not do so. *See Harmon v. Thornburgh*, 878 F.2d 484, 494 (D.C.Cir.1989) (court must "avoid unnecessary or premature constitutional rulings" and this concern "is heightened by the absence of meaningful argument by the parties on [constitutional] question"); *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 346, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) ("Court will not 'anticipate a question of constitutional law in advance of the necessity of deciding it'").

Even were we to proceed as urged by the amicus and the dissent, however, we would only review the CTEA as we would any other exercise of a power enumerated in Article I. That is we would ask, following *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 421, 4 L.Ed. 579 (1819), whether the CTEA is a "necessary and proper" exercise of the power conferred upon the Congress by the Copyright Clause; assuming Judge Sentelle is correct and *Schnapper* is wrong about the relationship of the preamble to the rest of that Clause, this would require that the CTEA be an "appropriate" means, and "plainly adapted" to the end prescribed in the preamble, "promot[ing] Progress of Sci-

ence and useful Arts." The Congress found that extending the duration of copyrights on existing works would, among other things, give copyright holders an incentive to preserve older works, particularly motion pictures in need of restoration. *See* S.Rep. No. 104–315, at 12 (1996). If called upon to do so, therefore, we might well hold that the application of the CTEA to subsisting copyrights is "plainly adapted" and "appropriate" to "promot[ing] progress." *See Ladd v. Law & Technology Press,* 762 F.2d 809, 812 (9th Cir.1985) (upholding the deposit requirement of the Copyright Act of 1976 as "necessary and proper" because the purpose was "to enforce contributions of desirable books to the Library of Congress").

Judge Sentelle concludes otherwise only because he sees a categorical distinction between extending the term of a subsisting copyright and extending that of a prospective copyright. This distinction is not to be found in the Constitution itself, however. The dissent identifies nothing in text or in history that suggests that a term of years for a copyright is not a "limited Time" if it may later be extended for another "limited Time." Instead, the dissent suggests that the Congress—or rather, many successive Congresses—might in effect confer a perpetual copyright by stringing together an unlimited number of "limited Times," although that clearly is not the situation before us. The temporal thrust of the CTEA is a good deal more modest: The Act matches United States copyrights to the terms of copyrights granted by the European Union, *see* Council Directive 93/98, art. 7, 1993 O.J. (L 290) 9; in an era of multinational publishers and instantaneous electronic transmission, harmonization in this regard has obvious practical benefits for the exploitation of copyrights. This is a powerful indication that the CTEA is a "necessary and proper" measure to meet contemporary circumstances rather than a step on the way to making copyrights perpetual; the force of that evidence is hardly diminished because, as the dissent correctly points out, the EU is not bound by the Copyright Clause of our Constitution. As for the dissent's objection that extending a subsisting copyright does nothing to "promote Progress," we think that implies a rather crabbed view of progress: Preserving access to works that would otherwise disappear—not enter the public domain but disappear—"promotes Progress" as surely as does stimulating the creation of new works.

The position of our dissenting colleague is made all the more difficult because the First Congress made the Copyright Act of 1790 applicable to subsisting copyrights arising under the copyright laws of the several states. *See* Act of May 31, 1790, §§ 1 and 3, 1 Stat. 124–25.\* The construction of the Constitution "by [those] contemporary with its formation, many of whom were members of the convention which framed it, is of itself entitled to very great weight, and when it is remembered that the rights thus established have not been disputed [for this long], it is almost conclusive." *Burrow–Giles Lithographic Co. v. Sarony,* 111 U.S. 53, 57, 4 S.Ct. 279, 28 L.Ed. 349 (1884). The plaintiffs, recognizing the import of this "almost conclusive" point for their own theory, try to avoid it with the suggestion that application of the Act of 1790 to subsisting copyrights "is fully understandable under a Supremacy Clause analysis" in that it "clarif[ied] which law (state or federal) would govern th[o]se copyrights." But that will not do: A federal law is not valid, let alone supreme, if it is not first an exercise of an enumerated power. And the First Congress was clearly secure in its power under the Copyright Clause to extend the terms of subsisting copyrights beyond those granted by the States.

---

\* Indeed, each of the four later Congresses that extended the terms of copyrights followed suit in doing so for subsisting as well as prospective copyrights. *See* Act of Feb. 3, 1831 § 1, 4 Stat. 436–39; Act of March 4, 1909 § 23, 35 Stat. 1075–88; Pub.L. No.94–553 § 301, 90 Stat. 2541–2602 (1976); Pub.L. No. 105–298, 112 Stat. 2827 (2000).

Such guidance as the Supreme Court has given further confirms us in this view of the matter. The Court has made plain that the same Clause permits the Congress to amplify the terms of an existing patent. As early as 1843 it established that the status of a particular invention and its protections

> must depend on the law as it stood at the emanation of the patent, together with such changes as have been since made; for though they may be retrospective in their operation, that is not a sound objection to their validity; the powers of Congress to legislate upon the subject of patents is plenary by the terms of the Constitution, and as there are no restraints on its exercise, there can be no limitation of their right to modify them at their pleasure, so that they do not take away the rights of property in existing patents.

*McClurg v. Kingsland,* 42 U.S. (1 How.) 202, 206, 11 L.Ed. 102 (1843).

Within the realm of copyright, the Court has to the present era been similarly deferential to the judgment of the Congress. "As the text of the Constitution makes plain, it is Congress that has been assigned the task of defining the scope of the limited monopoly that should be granted to authors or to inventors in order to give the appropriate public access to their work product;" that "task involves a difficult balance between [competing interests]" as reflected in the frequent modifications of the relevant statutes. *Sony Corp. v. Universal City Studios, Inc.,* 464 U.S. 417, 429, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984). And still more recently: "Th[e] evolution of the duration of copyright protection tellingly illustrates the difficulties Congress faces [in exercising its copyright power].... [I]t is not our role to alter the delicate balance Congress has labored to achieve." *Stewart v. Abend,* 495 U.S. 207, 230, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990).

## IV. Conclusion:

In sum, we hold that the CTEA is a proper exercise of the Congress's power under the Copyright Clause. The plaintiffs' first amendment objection fails because they have no cognizable first amendment interest in the copyrighted works of others. Their objection that extending the term of a subsisting copyright violates the requirement of originality misses the mark because originality is by its nature a threshold inquiry relevant to copyrightability, not a continuing concern relevant to the authority of the Congress to extend the term of a copyright.

Whatever wisdom or folly the plaintiffs may see in the particular "limited Times" for which the Congress has set the duration of copyrights, that decision is subject to judicial review only for rationality. This is no less true when the Congress modifies the term of an existing copyright than when it sets the term initially, and the plaintiffs—as opposed to one of the amici—do not dispute that the CTEA satisfies this standard of review. The question whether the preamble of the Copyright Clause bars the extension of subsisting copyrights—a question to which the analysis in *Schnapper* seems to require a negative answer—may be revisited only by the court sitting *en banc* in a future case in which a party to the litigation argues the point.

For the foregoing reasons, the decision of the district court is

*Affirmed.*

SENTELLE, Circuit Judge, dissenting in part:

While I concur with much of the majority's opinion, insofar as it holds constitutional the twenty-year or more extension of copyright protection for existing works, I dissent. This issue calls upon us to consider the scope of one of the clauses granting enumerated powers to Congress, specifically, Art. I, § 8, cl. 8:

> Congress shall have power ... to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right

to their respective writings and discoveries....

In ascertaining the breadth of an enumerated power, I would follow the lead of the United States Supreme Court in *United States v. Lopez*, 514 U.S. 549, 552, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), and "start with first principles." The governing first principle in *Lopez* and in the matter before us is that "[t]he Constitution creates a Federal Government of enumerated powers." 514 U.S. at 552, 115 S.Ct. 1624 (citing Art. I, § 8). The Framers of the Constitution adopted the system of limited central government "to ensure the protection of our fundamental liberties." *Gregory v. Ashcroft*, 501 U.S. 452, 458, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991) (internal quotations and citations omitted). The *Lopez* decision, considering the validity of the so-called Gun–Free School Zones Act, reminded us that "congressional power under the Commerce Clause ... is subject to outer limits." 514 U.S. at 556–57, 115 S.Ct. 1624; *see also United States v. Morrison*, 529 U.S. 598, 120 S.Ct. 1740, 1748–49, 146 L.Ed.2d 658 (2000).

It would seem to me apparent that this concept of "outer limits" to enumerated powers applies not only to the Commerce Clause but to *all* the enumerated powers, including the Copyright Clause, which we consider today. In determining whether the legislation before it in such cases as *Lopez* exceeded the outer limit of the authority granted under the Commerce Clause, the *Lopez* Court laid out a precise outline concededly not applicable by its terms to the construction of other clauses, but I think most useful in conducting the same sort of examination of the outer limits of any enumerated power. As a part of that analysis, the Court examined the extension of congressional authority to areas beyond the core of the enumerated power with a goal of determining whether the rationale offered in support of such an extension has any stopping point or whether it would lead to the regulation of all human activity. *See* 514 U.S. at 564, 115 S.Ct. 1624 ("Thus, if we were to accept the Government's arguments, we are hard

pressed to posit any activity by an individual that Congress is without power to regulate."). I fear that the rationale offered by the government for the copyright extension, as accepted by the district court and the majority, leads to such an unlimited view of the copyright power as the Supreme Court rejected with reference to the Commerce Clause in *Lopez*.

What then do I see as the appropriate standard for limiting that power? Again, the *Lopez* decision gives us guidance as to the application of first principles to the determination of the limits of an enumerated power. Citing *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 189–190, 6 L.Ed. 23 (1824), the *Lopez* Court acknowledged "that limitations on the commerce power are inherent in the very language of the Commerce Clause." 514 U.S. at 553, 115 S.Ct. 1624. Just so with the Copyright Clause. What does the clause empower the Congress to do?

To promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries....

That clause empowers the Congress to do one thing, and one thing only. That one thing is "to promote the progress of science and useful arts." How may Congress do that? "By securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries." The clause is not an open grant of power to secure exclusive rights. It is a grant of a power to promote progress. The means by which that power is to be exercised is certainly the granting of exclusive rights—not an elastic and open-ended use of that means, but only a securing for limited times. *See Stewart v. Abend*, 495 U.S. 207, 228, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990) ("The copyright term is limited so that the public will not be permanently deprived of the fruits of an artist's labors."). The majority acknowledges that "[i]f the Congress were to make copyright protection permanent, then it

surely would exceed the power conferred upon it by the Copyright Clause." Maj. Op. at 377. However, there is no apparent substantive distinction between permanent protection and permanently available authority to extend originally limited protection. The Congress that can extend the protection of an existing work from 100 years to 120 years, can extend that protection from 120 years to 140; and from 140 to 200; and from 200 to 300; and in effect can accomplish precisely what the majority admits it cannot do directly. This, in my view, exceeds the proper understanding of enumerated powers reflected in the *Lopez* principle of requiring some definable stopping point.

Returning to the language of the clause itself, it is impossible that the Framers of the Constitution contemplated permanent protection, either directly obtained or attained through the guise of progressive extension of existing copyrights. The power granted by the clause again is the power "to promote the progress of science and useful arts." As stated above, Congress is empowered to accomplish this by securing for limited times exclusive rights. Extending existing copyrights is not promoting useful arts, nor is it securing exclusivity for a limited time.

The government has offered no tenable theory as to how retrospective extension can promote the useful arts. As the Supreme Court noted in *Lopez* and again in *United States v. Morrison,* that Congress concluded a given piece of legislation serves a constitutional purpose "does not necessarily make it so." *Lopez,* 514 U.S. at 557 n. 2, 115 S.Ct. 1624 (internal quotes omitted); *Morrison,* 120 S.Ct. at 1752. Pressed at oral argument, counsel for the government referred to keeping the promise made in the original grant of exclusivity for a limited time. The easy answer to this assertion is that Congress is not empowered to "make or keep promises" but only to do those things enumerated in Article I. The second problem with the government's assertion is that Congress made no promise to commit such an extension but only to secure the exclusive rights

for the original limited period. Thirdly, the means employed by Congress here are not the securing of the exclusive rights for a limited period, but rather are a different animal altogether: the extension of exclusivity previously secured. This is not within the means authorized by the Copyright Clause, and it is not constitutional.

The majority responds to this problem of the statute's exceeding the constitutional grant by reliance on *Schnapper v. Foley,* 667 F.2d 102 (D.C.Cir.1981), "in which we rejected the argument 'that the introductory language of the Copyright Clause constitutes a limit on congressional power.'" Maj. Op. at 378 (quoting 667 F.2d at 112). I will concede that it does not matter if I disagree with the language of *Schnapper* (which in fact I do) as it is our Circuit precedent and we are bound by its holding unless and until that holding is changed by this court *en banc* or by the higher authority of the Supreme Court. *See, e.g., La-Shawn A. v. Barry,* 87 F.3d 1389, 1395 (D.C.Cir.1996) (en banc) ("One three-judge panel . . . does not have the authority to overrule another three judge panel of the court. That power may be exercised only by the full court." (citations omitted)); *United States v. Kolter,* 71 F.3d 425, 431 (D.C.Cir.1995) ("This panel would be bound by [a prior] decision even if we did not agree with it.").

Therefore, it is immaterial that the prior opinion is, in my view, erroneous in styling the granting clause of the sentence as merely introductory when in fact it is the definition of the power bestowed by that clause. Thus, unless and until this precedent is wiped away, if *Schnapper* has held that we may not look to the language of this phrase to determine the limitations of the clause then I must concede that we are bound by that holding and join the majority's result. However, it does not appear to me that this is the holding of *Schnapper.* The *Schnapper* Court dealt with limited questions related to the application of the copyright laws to works commissioned by the U.S. government. In answering those

questions, the *Schnapper* Court held that "Congress need not 'require that each copyrighted work be shown to promote the useful arts.'" 667 F.2d at 112 (quoting *Mitchell Bros. Film Group v. Cinema Adult Theater*, 604 F.2d 852, 860 (5th Cir. 1979)). It was in that context that the *Schnapper* Court employed the wording relied upon by the majority concerning the "introductory language" of the Copyright Clause. Insofar as that wording is taken to be anything more than the determination concerning that limited analysis, it is not a holding but simply *dicta* (perhaps *obiter dicta)* and not binding on future panels.

Rather, the *Schnapper* analysis again takes us back to the *Lopez* approach to judicial interpretation of the enumerated powers clauses. In *Lopez,* one of the means employed to determine the constitutionality of extended application of the Commerce Clause is an elemental inquiry into whether in each case the purportedly regulated action "in question affects interstate commerce." 514 U.S. at 561, 115 S.Ct. 1624. However, the jurisdictional element is not necessary under *Lopez* analysis of Commerce Clause regulation where Congress is directly regulating "the use of the channels of interstate commerce" or "persons or things in interstate commerce." *Id.* at 558, 115 S.Ct. 1624. Similarly, I suggest that in analyzing the extent of congressional power under the Copyright Clause, the *Schnapper* holding that each individual application of copyright protection need not promote the progress of science and the useful arts does not mean that Congress's power is otherwise unlimited, anymore than the lack of a necessity for case-by-case analysis of the effect on interstate commerce validates anything Congress may wish to do under the rubric of the Commerce Clause. Though, under *Schnapper,* we may not require that each use of a copyright protection promote science and the arts, we can require that the exercise of power under which those applications occur meet the language of the clause which grants the Congress the power to enact

the statute in the first place. This the extension does not do. It is not within the enumerated power.

The majority suggests that my reading of *Schnapper* is somehow foreclosed by the fact that it accepts the argument of an amicus. *See* Maj. Op. at 378 (citing 16A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3975.1 & n.3 (3d ed.1999); *Resident Council of Allen Parkway Vill. v. HUD,* 980 F.2d 1043, 1049 (5th Cir.1993)). The disposition I suggest would offend nothing in either Professor Wright's treatise or the cases aligned with it. Neither I nor the amicus raise any issue not raised by the parties to the case, nor disposed of by a majority of the court. Appellants raise the issue "whether ... the Copyright Clause of the Constitution of the United States constrains the Congress from extending for a period of years the duration of copyrights, both those *already extant* and those yet to come." Maj. Op. at 373 (emphasis added). The majority addresses that issue and holds against the appellant. Maj. Op. at 380 ("we hold that the CTEA is a proper exercise of the Congress's power under the Copyright Clause"). That the amicus argues more convincingly in appellants' favor on the issue raised by the appellants than they do themselves is no reason to reject the argument of the amicus. Indeed, our Circuit Rules provide that an amicus brief "must avoid repetition of facts or legal arguments made in the principal (appellant/petitioner or appellee/respondent) brief and focus on points not made or adequately elaborated upon in the principal brief, although relevant to the issues before this court." Circuit Rule 29. Obviously that is precisely what the amicus has done in this case.

*Resident Council of Allen Parkway Village,* relied on by the majority, highlights this difference between introducing issues not raised by the parties on the one hand and making new arguments for issues otherwise properly raised on the other. As the Fifth Circuit noted in that case, "[w]e are constrained only by the rule that an

amicus curiae generally cannot expand the scope of an appeal to implicate *issues* that have not been presented by the parties to the appeal." 980 F.2d at 1049 (emphasis added).

Our Circuit Rule and the Fifth Circuit are in good company in allowing amici to make additional arguments that address issues which the parties have raised but not argued in the same fashion. The Supreme Court has approved precisely that approach. In *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), that Court considered a question of retroactivity as to a fair cross section jury venire in a case also raising a claim under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The Court noted that "[t]he question of retroactivity with regard to petitioner's fair cross section claim has been raised only in an *amicus* brief." 489 U.S. at 300, 109 S.Ct. 1060. Noting that the "question is not foreign to the parties, who have addressed retroactivity with respect to petitioner's *Batson* claim," *id.,* the Court proceeded to address the merits of the argument.

Nor are we constrained by the parties' apparent agreement as to the state of the law under *Schnapper.* The Supreme Court has made it clear that we cannot be bound by stipulations of law between the parties, where there is "a real case and controversy extending to that issue." *United States Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.,* 508 U.S. 439, 446, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993). As the High Court put it, " '[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but

rather retains the independent power to identify and apply the proper construction of governing law.' " *Id.* (quoting *Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 99, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991)).

I find two other arguments the majority invokes against my dissent unpersuasive. The enactment by the first Congress in 1790 regularizing the state of copyright law with respect to works protected by state acts preexisting the Constitution appears to me to be *sui generis.* Necessarily, something had to be done to begin the operation of federal law under the new federal Constitution. The Act of May 31, 1790, 1 Stat. 124, created the first (and for many decades only) federal copyright protection; it did not *extend* subsisting *federal* copyrights enacted pursuant to the Constitution. *Cf. Wheaton v. Peters,* 33 U.S. (8 Pet.) 591, 661, 8 L.Ed. 1055 (1834) ("Congress, then, by this [copyright] act, instead of sanctioning an existing right, as contended for, created it."). The fact that the CTEA "matches United States copyrights to the terms of copyrights granted by the European Union," Maj. Op. at 379 (citing Council Directive 93/98, art. 7, 1993 O.J. (L 290) 9), is immaterial to the question. Neither the European Union nor its constituent nation states are bound by the Constitution of the United States. That Union may have all sorts of laws about copyrights or any other subject which are beyond the power of our constitutionally defined central government.

Therefore, I respectfully dissent.